UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

| | |
|---|---|
| SPIRIDON MATIATOS, on behalf of himself and all others similarly situated, | : : |
| | : |
| Plaintiff, | : |
| - against - | : **CLASS AND COLLECTIVE** |
| | : **ACTION COMPLAINT** |
| SIENNA MARKETING & CONSULTING, INC. D/B/A CREATIVE CAPITAL SOLUTIONS, | : : |
| | : |
| Defendant. | : |

No.:

------------------------------------------------------------------------X

Plaintiff Spiridon Matiatos, on behalf of himself and all others similarly situated ("Plaintiff"), by and through his attorneys Kessler Matura P.C., complaining of Sienna Marketing & Consulting, Inc. d/b/a Creative Capital Solutions ("Defendant"), alleges as follows:

## **INTRODUCTION**

1.      This lawsuit seeks to recover unpaid overtime and unpaid minimum wage compensation for Plaintiff and his similarly situated co-workers who have worked for Defendant in New York as Associate Business Finance Loan Brokers ("Cold Callers").

2.      Defendant's business is premised on hiring Cold Callers whose primary purpose is to call as many businesses as possible and market Defendant's services and products.

3.      Defendant's services and products include but are not limited to credit card processing, Merchant Cash Advance ("MCA") consolidation, term loans, working capital, SBA loans, AR factoring, hard money, and bridge loans. https://ccapsolution.com/products/ (last accessed Nov. 25, 2024).

4.      While employed by Defendant, Plaintiff and similarly situated Cold Callers consistently worked over 40 hours per week without receiving premium overtime pay for all hours worked.

5.      Throughout the relevant period, it was Defendant's policy to deprive Plaintiff and similarly situated Cold Callers of their earned overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the New York Labor Law, Articles 6 and 19 ("NYLL" or "N.Y. Lab. Law").

6.      In order to avoid paying Plaintiff and similarly situated Cold Callers overtime premiums for all hours worked in excess of 40 per workweek, Defendant misclassified Cold Callers as independent contractors.

7.      As part of its misclassification scheme, Defendant required Plaintiff and similarly situated Cold Callers to sign an independent contractor agreement.

8.      While employed by Defendant, Plaintiff and similarly situated Cold Callers were denied a minimum wage when Defendant transitioned from a base salary and commission pay structure to a commission only pay structure.

9.      Plaintiff now brings the First and Third Cause of Action, pursuant to Section 216(b) of the FLSA, on behalf of all individuals employed by Defendant as a Cold Caller at any time during the three years prior to the filing of the Complaint, who elect to opt-in into this action (the "Collective").

10.     Plaintiff brings the Second, Fourth, Fifth, and Sixth Causes of Action, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all individuals employed by Defendant as a Cold Caller during the six years prior to the filing of the Complaint (the "Class") (together with the Collective, the "Class" or "Class Members").

## JURISDICTION & VENUE

8.      Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331 and 29 U.S.C. § 216(b).

9.       This action properly lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in New York County.

10.      This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES

*Plaintiff Spiridon Matiatos*

10.      Plaintiff is a citizen of Queens County, New York.

11.      At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law §§ 190(2), 651(5).

12.      At all times relevant, Plaintiff was employed by Defendant as a Cold Caller.

13.      Plaintiff has expressed his consent to make these claims against Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

*Defendant Sienna Marketing & Consulting, Inc. d/b/a Creative Capital Solutions*

14.      Defendant is a domestic business corporation.

15.      Defendant is authorized to do business pursuant to the laws of the State of New York.

16.      At all times relevant to the Complaint, Defendant was and still is a corporation organized and existing pursuant to the laws of the State of New York.

17.      Defendant is headquartered in New York County, New York.

18.      Upon information and belief, Defendant maintains control, oversight, and direction over its operations and employment practices.

19.      At all times hereinafter mentioned, Defendant was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

20.     Defendant applied the same employment policies, practices, and procedures to all Cold Callers including policies, practices, and procedures with respect to payment of overtime and non-overtime compensation.

21.     At all times hereinafter mentioned, Defendant employed Cold Callers, including Plaintiff, who regularly engaged in commerce or within the meaning of the FLSA, 29 U.S.C. § 203(b), (h),(g), (k), (m), (o) & (r).

22.     Upon information and belief, Defendant's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

**FLSA COLLECTIVE ALLEGATIONS**

23.     Plaintiff brings the First and Third Causes of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and all similarly situated persons who work or have worked for Defendant as a Cold Caller within the last three years and who elect to opt-in to this action.

24.     Upon information and belief, there are approximately more than 100 current and former Cold Caller that are similarly situated to Plaintiff who were denied overtime compensation.

25.     Plaintiff represents other Cold Callers, and is acting on behalf of Defendant's current and former  Cold Callers' interests as well as his own interests in bringing this action.

26.     Defendant unlawfully required Plaintiff and all individuals employed as Cold Caller to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least 1 and ½ times their regular hourly rate.

27.     Plaintiff seeks to proceed as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following class of persons:

> All Cold Callers who are currently or have been employed by Defendant (hereinafter referred to as the "FLSA Collective") at any time during the three years prior to the filing of their respective consent forms (hereinafter referred to as the "Collective Period").

4

28.     Defendant was aware or should have been aware that the law required it to pay employees, including Plaintiff and the FLSA Collective, an overtime premium of one and one-half times their regular rate of pay for all work-hours Defendant suffered or permitted them to work in excess of 40 per workweek.  Upon information and belief, Defendant applied the same unlawful policies and practices to all Cold Callers.

29.     The FLSA Collective is readily identifiable and locatable through the use of the Defendant's records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings the Second, Fourth, Fifth, and Sixth Causes of Action on his own behalf and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of persons:

> All Cold Callers who are currently, or have been employed by the Defendant, in the State of New York at any time during the six years prior to the filing of this Complaint to the entry of the judgment in the case (hereinafter referred to as the "Class" and the "Class Period," respectively.)

31.     The persons in the Class are so numerous that joinder of all members is impracticable.  Further, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of the Defendant.

32.     Upon information and belief, the size of the Class is at least 100 individuals.

5

33. This matter is properly maintainable as a class action under Rule 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the putative Class, including but not limited to:

A. whether the Defendant failed to keep accurate time records for all hours worked by Plaintiff and the Class;

B. what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

C. whether the Defendant failed to pay proper compensation to Plaintiff and the Class for all work-hours in excess of 40 per workweek in violation of and within the meaning of the N.Y. Lab. Law Article 6, §§ 190 *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

D. whether the Defendant failed to pay proper compensation to Plaintiff and the Class the minimum wage in violation of and within the meaning of the N.Y. Lab. Law Article 6, §§ 190 *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

E. whether Defendant failed to furnish the Plaintiff and the Class with an accurate statement of, *inter alia*, wages, hours worked, and rates paid as required by N.Y. Lab. Law § 195;

F. whether Defendant failed to furnish Plaintiff and the Class with the hiring notice required by N.Y. Lab. Law § 195;

G. the nature and extent of the Class-wide injury and the appropriate measure of damages sustained by Plaintiff and the Class;

H. whether Defendant acted willfully or with reckless disregarding in its failure to pay the Plaintiff and the Class; and

I. the nature and extent of class-wide injury and the measure of damages for those injuries.

34. Plaintiff fairly and adequately protects the interests of and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class-action and employment litigation.

35.     A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in court against the corporate defendant. The damages sustained by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

36.     Further, Plaintiff and the Class have been equally affected by Defendant's failure to pay proper wages.

37.     Members of the Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

38.     Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

39.     Plaintiff's claims are typical of those of the Class. Plaintiff and the other Class Members were subjected to Defendant's policies, practices, programs, procedures, protocols, and plans alleged herein concerning the failure to pay proper wages.  Plaintiff's job duties are typical of those of the class members.

## COMMON FACTUAL ALLEGATIONS

### *Cold Callers are Defendant's Employees*

40.     Although Plaintiff and similarly situated Cold Callers were classified as independent contractors of Defendant, Defendant retained the right to control and did control nearly every aspect of the Plaintiff and similarly situated Cold Callers work.

41.     Defendant set Plaintiff and similarly situated Cold Callers work schedule. Defendant's Success Playbook provides a daily schedule, which features an hour-by-hour breakdown of each Cold Caller's workday.



**CREATIVE CAPITAL SOLUTIONS**

## SCHEDULE

**Managers in on Monday at 7:00AM**

7:00-7:45 → Set up GMASS campaign for the week

7:45-8:00 → Set up call backs for the day (go thru leads)

8:00-8:30 → Follow up on emails - make early call backs on leads

8:30-8:55 → Team pitch meeting #1 (get ready for dialer)

9:00-11:30 → DIAL - Prospect - *Bring in new leads***

11:30-12:00 → Make call backs (8:30 in CA) follow up on leads – confirm emails

12:00-1:00 → Lunch

1:00-1:30 → Team Pitch Meeting #2

1:30-3:30 → DIAL - Prospect - *Bring in new leads***

3:30-4:00 → Follow up on emails (Gmass & Outlook) Make call backs on leads – confirm emails

4:00-6:30 → DIAL - Prospect - *Bring in new leads*** (FOCUS ON WEST COAST)

6:30-7:00 → Follow up on emails - make last call backs for the day

7:00-8:00 → This is a crucial power hour everyday so do one of the following:

- Write down your goals for tomorrow (how many leads/docs/funds)
- Circle back to everything you got done today and be clear on what must get done tomorrow
- Engage your LinkedIn profile (find new businesses)
- Find new ISOs
- Find new lead/data sources
- Read on how to make more money (marketing, business, finance, etc.)
- Go over with your team/team leader all activity done for that day
- Pitch each other to get better
- Write down rebuttals/openers/closes
- Sharpen your math

**DO SOMETHING TODAY YOUR FUTURE SELF WILL THANK YOU FOR**

3

42.     Defendant required Plaintiff and similarly situated Cold Callers to follow the Success Playbook, which outlined in great detail how to make introductory and follow up calls; selling 101 – cold calling, and how to handle rebuttals from prospective clients.



**Table of Contents**
- ❖ Introduction to Creative Capital Solutions
- ❖ New Hire Daily Schedule
- ❖ Broker Daily Success Schedule
- ❖ What is the Alternative Lending Space?
- ❖ Products We offer:
  - ➤ Merchant Cash Advance
  - ➤ A/R Financing
  - ➤ Lines of Credit
  - ➤ Hard Money
  - ➤ Consolidation
  - ➤ Reserve Consolidation
- ❖ Intro & Follow-Up Script
- ❖ Selling 101 - Cold Calling
- ❖ Rebuttals
- ❖ Qualifying Questions/ Solution Based Selling
- ❖ Business Cycle
- ❖ Sales Cycle / Application Process
- ❖ Understanding Your Merchants Industry
- ❖ Industry Definitions
- ❖ Follow-Up
- ❖ Pipeline Management
- ❖ Selling Approvals



**CREATIVE CAPITAL SOLUTIONS**

## Follow-Up Call

## 15 minutes later

We spoke earlier in regards to getting $_____ for _____ (problem they're trying to solve). I haven't seen the application come back yet. I wanted to make sure you actually received it. Did you receive that application?

Would there be any reason that you wouldn't be able to get that back to me within the hour so I can get this over to underwriting?

[IF NOT]

What time can you get this back to me so we can make sure you can _____ (Remind them of the pain point and problem we're going to solve and **lock down a time**).

43.    Defendant required Plaintiff and similarly situated Cold Callers to "stay on the phone and bring in as much volume as humanly possible."  Success Playbook at ii.

44.    Defendant required Plaintiff and similarly situated Cold Callers to participate in a daily Cold Caller meeting. This meeting generally occurred at 10:30 a.m., and Cold Callers were quizzed on the Success Playbook.

45.    Plaintiff and similarly situated Cold Callers were not permitted to engage in other employment during their regularly scheduled hours with Defendant.

46.    Plaintiff and similarly situated Cold Callers could not negotiate with Defendant the commissions they earned.

47.    Defendant gathered and distributed to Plaintiff and similarly situated Cold Callers, business leads.

10

48.    Plaintiff and similarly situated Cold Callers did not have an opportunity to experience profit or losses as a result of their employment for Defendant.

49.    Defendant did not require Plaintiff and similarly situated Cold Callers to have any specific skills or take any independent initiative to perform their duties.   As stated in the Success Playbook:

**At Creative Capital we hire for attitude and train for skill**

50.    Plaintiff and similarly situated Cold Callers performed tasks that are not outside the usual course of Defendant's business and are integral to Defendant's business.

51.    Plaintiff and similarly situated Cold Callers could not engage in an independent business given the full-time nature of their work for Defendant.

52.    Plaintiff and similarly situated Cold Callers are dependent upon Defendant for their work.

**INDIVIDUAL FACTUAL ALLEGATIONS**

53.    Plaintiff was employed by Defendant as a Cold Caller from May 2021 through December 2023.

54.    As a Cold Caller, Plaintiff's sole job duty was to "contact as many businesses as possible and market [Defendant's] service as well as the product by any means necessary." Success Playbook at ii.

## THE ASSEMBELY LINE

**What is your Job?**

Your job is to contact as many businesses as possible and market our service as well as the product by any means necessary. Once a customer shows interest you must sell them and collect the required documents "DOCS".

 DOCS - Consist of an Application and 3 months of the most recent business bank statements

**What is the Closers Job?**

The Closers Job is to Close the deal. PERIOD. Always remember silence is golden.

### What is Required?

You are required to work hard.

***Your job is to stay on the phone and bring in as much volume as humanly possible***

Always keep your eyes on the vision of where you want to be in life. Work to level up. Stand up and pitch with passion and energy! Believe in this product, it works and if you work hard it will make you RICH!

READ SALES BOOKS, NEVER TURN OFF, EDUCATE YOURSELF, EXHAUST ALL AVENUES AND YOU HAVE MY WORD YOU WILL BE SUCCESSFUL IN THIS BUSINESS

### Welcome to Bad Guy Enterprises. Happy Hunting let's FUND some WHALES!

55.     In an attempt to insulate itself from liability and to deny their Cold Callers the opportunity to challenge its unlawful practices, Defendant forced Plaintiff to sign an independent contractor agreement.

56.     Plaintiff was not permitted to negotiate the terms of the independent contractor agreement.

57.     Plaintiff was required to sign Defendant's independent contractor agreement prior to working for Defendant.

58.     Defendant promised Plaintiff a base salary plus commissions. However, in late 2022 Defendant stopped paying Plaintiff a base salary and only paid Plaintiff commissions.

59.     Throughout his employment with Defendant, Plaintiff was required to report to work at approximately 8:30 a.m. until approximately 7:00 p.m., every Monday to Friday.

60.     Every day, Defendant required Plaintiff to call potential clients by 9:00 a.m.

61.     Every day around 10:30 a.m., Defendant required Plaintiff to attend a Cold Caller meeting.

62.     Plaintiff was not permitted to engage in other employment during his regularly scheduled hours with Defendant.

63.     Plaintiff did not have the opportunity to experience profits or losses as a result of his employment with Defendant.

64.     Plaintiff did not have an opportunity to invest in his alleged business as a result of his employment with Defendant.

65.     Defendant did not require Plaintiff to have any specific skills or take any independent initiative to perform his required duties.

66.     Plaintiff did not perform services that are not outside the usual course of Defendant's business.

67.     Plaintiff's services were integral to Defendant's business.

68.     Plaintiff could not engage in an independent business given the full-time nature of the work he completed for Defendant.

69.     Plaintiff was dependent upon Defendant for work and was unable to offer his services to other companies during the workday.

70.     At all times hereinafter mentioned, Plaintiff was required to be paid overtime pay at the statutory rate of one and one-half the regular rate of pay after working 40 hours in a workweek for Defendant.

71.     Plaintiff worked more than 50 hours per week during the weeks he worked for Defendant.

72.     Defendant failed to compensate Plaintiff at a rate of at least one and one-half times his regular hourly rate for all time worked in excess of 40 hours per week.

73.     Plaintiff received a weekly pay of varying amounts, and in or around 2022, Plaintiff stopped receiving his base pay, and exclusively received commissions.  When calculated on an hourly basis, Plaintiff's wages fall below the federal minimum wage of $7.25 per hour and corresponding state minimum wage for New York City ((2018 -2023) $15.00; (2024) $16.00).

74.     As a result of this misclassification, Plaintiff was not compensated in accordance with minimum wage requirements.

75.     Defendant failed to furnish Plaintiff and Class Members with a wage notice upon being hired as required by the NYLL.

76.     By failing to provide wage notices at the time of hiring, the Defendant deprived Plaintiff and the Class Members of essential information about their rate of pay, overtime rate, and pay period. This lack of transparency prevented them from fully understanding how much they would be earning and knowing their regular pay day.

77.     Defendant did not provide Plaintiff and Class Members with an accurate wage statement each pay period listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid as required by the NYLL.

78.     Defendant did not list accurate hours worked on Cold Callers' paystubs.

79.     Defendant's failure to report Plaintiff's and Class Members' actual hours worked facilitated its unlawful overtime policy.

80.     That is, Defendant failed to provide Cold Callers with the information necessary to determine whether their weekly hours ever exceeded 40 in a single workweek, entitling them to overtime.

81.     This hindered Plaintiff and Class Members' ability to challenge the unlawful wage payment at the time of the payment, and understand their earnings.

**FIRST CAUSE OF ACTION**
**FLSA – Unpaid Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

82.     Plaintiff, on behalf of himself and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

83.     Plaintiff and members of the FLSA Collective are employees entitled to be paid overtime compensation for all overtime hours worked.

84.     Defendant employed Plaintiff and members of the FLSA Collective for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and the FLSA Collective for all time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a) (1).

85.     Plaintiff has expressed his consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

86.     Defendant failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiff and the FLSA Collective.

87.     Because of Defendant's violations of the FLSA were willful, a 3 year statute of limitations applies, pursuant to 29 U.S.C. § 255.

88.     As a consequence of the willful underpayment of wages, alleged above, Plaintiff has incurred damages thereby and Defendant is indebted to them in the amount of the unpaid

overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime Wages
**(Brought on behalf of Plaintiff and the Class)**

89.     Plaintiff, on behalf of himself and the Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

90.     Defendant employed Plaintiff for workweeks longer than 40 hours and willfully failed to compensate Plaintiff for all time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of NYLL.

91.     By the course of conduct set forth above, Defendant has violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

92.     Defendant failed to keep, make, preserve, maintain and furnish accurate records of time worked by Plaintiff.

93.     Defendant had a policy and practice of refusing to pay overtime compensation for all hours worked to Plaintiff and the Class.

94.     Defendant's failure to pay overtime compensation to Plaintiff and the Class was willful within the meaning of N.Y. Lab. Law § 663.

95.     As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the Class have incurred damages thereby and Defendant is indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

96.     Plaintiff seeks recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendant as provided by the NYLL.

**THIRD CAUSE OF ACTION**
**FLSA – Unpaid Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

97.    Plaintiff, on behalf of himself and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

98.    Defendant engaged in a widespread pattern, policy and practice of violating the FLSA as detailed in this Collective and Class Action Complaint.

99.    At all relevant times the Defendant has been and continue to be an employer engaged in interstate commerce within the meaning of FLSA, 29 U.S.C. §203.

100.    At all relevant times Defendant employed "employee[s]" including Plaintiff and the FLSA Collective Members.

101.    Defendant was required to pay Plaintiff and the members of the FLSA Collective at the applicable federal minimum wage rate for all hours worked.

102.    Defendant willfully failed to pay Plaintiff and the members of the FLSA Collective the minimum wage that they are entitled to receive.

103.    Defendant required Plaintiff and members of the FLSA Collective to perform more than approximately 20 hours of unpaid work every week.

104.    Defendant's violations of the FLSA, as described in this Collective and Class Action Complaint, have been willful and intentional. Defendant was aware or should have been aware that the practices described in this Collective and Class Action Complaint were unlawful.

105.    Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and the FLSA Collective.

106.    Because Defendant's violation of the FLSA was willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

107.    Plaintiff has expressed his consent to make these claims against Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

108.    As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the members of the FLSA Collective have suffered damages by being denied the minimum wage in accordance with the FLSA, in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, together with prejudgment interest, attorneys' fees, and costs and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**FOURTH CAUSE OF ACTION**
**NYLL – Unpaid Non-Overtime Wages**
**(Brought on behalf of Plaintiff and the Class)**

109.    Plaintiff, on behalf of himself and the Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

110.    Defendant engaged in a widespread pattern, policy and practice of violating the NYLL as detailed in this Collective and Class Action Complaint.

111.    At all relevant times Plaintiff was an employee of the Defendant.

112.    At all relevant times Defendant was an employer of Plaintiff within the meaning of N.Y. Lab. Law § 190(3).

113.    At all relevant times Plaintiff was covered by the NYLL.

114.    Defendant was required to pay Plaintiff and the Class at their regular hourly rate for all hours worked for Defendant up to and including 40 hours per week.

115.    Defendant willfully failed to compensate Plaintiff and the Class at their regular hourly rate up to and including 40 hours per week, in violation of the requirements of the NYLL, specifically N.Y. Lab. Law § 661(3).

116.    Defendant failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class.

117.    Defendant had a policy and practice of refusing to compensate Plaintiff and the Class for all earned wages.

118.    Defendant's failure to pay compensation to Plaintiff and the Class was willful within the meaning of N.Y. Lab. Law § 663.

119.    As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the Class incurred damages thereby and Defendant is indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

120.    Plaintiff seeks recovery of liquidated damages, interest, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

**<u>FIFTH CAUSE OF ACTION</u>**
**Failure to Provide Wage Notice**
**(Brought on behalf of Plaintiff and the Class)**

121.    Plaintiff, on behalf of himself and the Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

122.    Defendant failed to supply Plaintiff and the Class with a wage notice, as required by N.Y. Lab. Law § 195(1), in English or in the language identified as Plaintiff and the Class's primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business

as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

123.    Defendant's failure to provide a hiring notice facilitated its misclassification scheme.

124.    Defendant's failure to provide a hiring notice enabled it to underpay Plaintiff, and the Class as set forth above.

125.    Defendant withheld essential information from Plaintiff and the Class, at the time of hiring, that may have improved his and the Class's ability to rectify the wage violations set forth above without the need for litigation, or negotiate for better wages.

126.    Due to Defendant's violations of N.Y. Lab. Law § 195(1), Plaintiff and the Class are entitled to statutory penalties of $50 dollars for each workday that Defendant failed to provide Plaintiff with a wage notice, or a total of $5,000 dollars each, and reasonable attorneys' fees and costs, as provided for by N.Y. Lab. Law § 198(1-b).

## <u>SIXTH CAUSE OF ACTION</u>
### Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiff and the Class)

127.    Plaintiff, on behalf of himself and the Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

128.    Defendant failed to supply Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by N.Y. Lab. Law § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as

part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

129.    Defendant's failure to provide accurate and timely wage statements facilitated its misclassification scheme.

130.    Defendant's failure to provide accurate and timely wage statements enabled it to underpay Plaintiff and the Class, as set forth above.

131.    Defendant withheld essential information from Plaintiff and the Class, each time Defendant paid Plaintiff and the Class, that may have improved his and the Class's ability to rectify the wage violations set forth above without the need for litigation, or negotiate for better wages.

132.    Due to Defendant's violations of N.Y. Lab. Law § 195(3), Plaintiff and the Class are entitled to statutory penalties $250 dollars for each workday that Defendants failed to provide Plaintiff with accurate wage statements, or a total of $5,000 each, and reasonable attorneys' fees and costs, as provided for by N.Y. Lab. Law § 198 (1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief:

A.    The Court, at the earliest possible time, certify this case as a collective action, authorize the issuance of notice to the Collective, and permit putative Collective members to opt into this action;

B.    Certification of this case as a class action pursuant to Rule 23;

C.    Designation of Plaintiff as the class representative, and counsel of record as class counsel;

D.    Unpaid wages that were unlawfully not paid pursuant to the FLSA, NYLL and the supporting Miscellaneous Wage Order;

E.    Liquidated damages;

F.    Pre-judgment interest and post-judgment interest as provided by law;

G.    Appropriate equitable and injunctive relief to remedy violations;

H.    Attorneys' fees and costs of the action;

I.    A declaratory judgment that the practices complained of are unlawful;

J.    A reasonable incentive award for Plaintiff to compensate him for the time he spent and for the risks he took attempting to recover wages for the Collective and Class;

K.    Such other relief as this Court deems just and proper.

Dated: Melville, New York
       November 25, 2024

Respectfully submitted,

By:   /s/ Troy L. Kessler
      Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Jocelyn Small
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100
tkessler@kesslermatura.com
jsmall@kesslermatura.com

***Attorneys for Plaintiff and the
Putative Class and Collective Actions***